CASE 71—PETITION EQUITY—DECEMBER 7.

## Fennessey v. Fennessey.

APPEAL FROM KENTON CHANCERY COURT.

A. CONVEYANCE BY THE HUSBAND BEFORE MARRIAGE, IN CONTEMPLATION THEREOF, will not be set aside for the purpose of giving the wife dower, if the intention of the grantor was to provide for his children by a former marriage, and not to defraud the wife, the advancement or gift being reasonable when considered with reference to the property owned by the grantor.

In this case the promises of the grantor to his former wife to execute the conveyances, and his continued purpose to do so, are considered as circumstances showing his good faith.

SIMMONS & SCHMIDT FOR APPELLANT.

1. The contract of marriage is considered alone in the light of a civil contract. (Hobbs v. Blandford, 7 Mon., 473; Thayer v. Thayer, 14 Vt.)
2. Dower is a favorite of the law. (Thayer v. Thayer, 14 Vt.)
3. A conveyance without consideration, by one party pending a marriage treaty, upon the eve of its solemnization, and without the knowledge or concurrence of the other party, is express and positive fraud, which admits of no explanation or palliation. (Littleton v. Littleton, 1 Dev. and Batt. Law; Thayer v. Thayer, 14 Vt.; Swain v. Perine, 5 Johns.; Petty v. Petty, 4 B. M., 215; McAfee v. Ferguson, 9 B. M., 475; Hobbs v. Blandford, 7 Mon., 469; Cheshire v. Payne, 16 B. M., 618; Leach v. Duvall, 8 Bush, 202.)

  A provision in favor of children by a former marriage does not form an exception to the general rule of law. (Ramsay, Guardian, v. Joyce, 1 McMullin's Eq. Rep., s. c.)
4. The retention of any control over the property given to his children by the donor makes the whole transaction fraudulent as to the surviving

Fennessey v. Fennessey.

widow. (Hayes v. Henry, 1 Md. Ch'y, 338; Hall v. Hall, 2 Vt., 274; 2 Roper, Husband and Wife, pp. 17 and 18; Reynolds v. Vance and Others, 1 Heiskell, 344; Petty v. Petty, 4 B. M., 215; McAfee v. Ferguson, 9 B. M., 475; Leach v. Duvall, 8 Bush, 202; Hobbs v. Blandford, 7 Mon., 469.)

5. The case presented upon this appeal is the same that was presented upon the former appeal, and the decision then rendered by this court. is conclusive of the case.

L. J. BLAKELEY FOR APPELLEE.

1. Where a conveyance is executed, upon the eve of marriage, by either party to a marriage contract, the court will determine, from all the attendant circumstances, whether there is fraud or not.

As the conveyances attacked in this case were reasonable and proper, and there was estate in which the appellant was entitled to dower *abundantly* sufficient in value and amount to maintain her during life, she can not complain.

2. The conveyances complained of did not divest the husband of a valuable or material part of his estate, and, therefore, the appellant must fail in her demand.

Cases commented upon: Petty v. Petty, 4 B. M., 215; Baker v. Chase, 6 Hill, 482; Swain v. Perine, 5 John. Ch'y, 482; McAfee v. Ferguson, 9 B. M., 475; Leach, &c., v. Duvall, 8 Bush, 201.

BENTON & BENTON ON SAME SIDE.

1. When a person conveys the whole or a very large portion of his estate shortly before marriage, fraud will be presumed. But if he only makes a reasonable advancement to his children, no presumption of fraud arises. (Leach, &c., v. Duvall and Wife, 8 Bush, 205; Reynolds v. Vance, 1 Heisk., 344; McIntosh v. Ladd, 1 Humph., 459; Littleton v. Littleton, 1 Dev. and B., 330; Bigelow on Fraud, 96.)

John Fennessey conveyed to appellant less than a ninth part of his estate. This fact rebuts the presumption of fraud, and as appellant failed to introduce other testimony to establish a fraudulent intent, her petition was properly dismissed.

2. If appellant stands on the footing of a creditor, she occupies only the position of a subsequent creditor, and it is always held that a subsequent creditor must prove an *actual* intent to defraud. (Lyne v. Bank of Ky., 5 J. J. Mar., 554; Lowry v. Fisher, 2 Bush, 76; Story's Equity, sec. 362; Duhme & Co. v. Young, &c., 3 Bush, 350; Doyle, &c., v. Sleeper, &c., 1 Dana, 533.)

3. The circumstances surrounding the conveyances, which it was competent to inquire into, show not only that the conveyances were not fraudulent, but that they were highly praiseworthy. They must, therefore, be upheld. (St. George v. Wake, 1 Mylne and Keen, 610;

Fennessey v. Fennessey.

McIntosh v. Ladd, &c., 1 Humph., 459; Baker v. Chase, 6 Hill, 482.)

Cases commented upon : Littleton v. Littleton, 1 Dev. and Batt. Law; Thayer v. Thayer, 14 Vt.; Swain v. Perine, 5 Johns.; Ramsey, Guardian, v. Joyce, 1 McMullin's Eq. Rep., s. c.; Reynolds v. Vance, 1 Heisk., 344; Wilson, &c., v. Daniel, &c., 13 B. Mon., 349; Hobbs v. Blandford, 7 Mon.. 469; McAfee v. Ferguson, 9 B. M., 475; Leach, &c., v. Duvall and Wife, 8 Bush, 202; Cheshire and Wife v. Payne, &c., 16 B. M., 618.)

4. The reasons for which it has been held that a conveyance privately made by a woman during treaty of marriage is *prima facie* fraudulent and void, do not apply with equal force to a conveyance made under similar circumstances by the intended husband. (Bright's Husband and Wife, vol. 1, p. 357; Countess of Strathmore v. Bowes, 1 Vesey, Jr., 27.)

If a man, before marriage, conveys his estate privately, without the knowledge of his wife, to trustees, in trust for himself and his heirs in fee, that will prevent dower. (Swannock v. Sutton, Co. Litt., 208; Banks v. Sutton, 2 P. W., 700; Bottomley v. Fairfax, Prec. Ch., 336; Show. Parl. Cas., 71.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted in the Kenton Chancery Court by the appellant, Alicia T. Fennessey, against James E. Fennessey and others, to recover dower in certain houses and lots in the city of Covington alleged to have been owned by her husband in his lifetime, and conveyed by him to his children by a former wife in fraud of her marital rights.

John Fennessey was married to the appellant on the 24th of September, in the year 1867, and three days before the marriage conveyed the houses and lots, in which dower is claimed, of the value of nine thousand dollars, to three of his children by his first wife, who are the present appellees.

This is the second time the case has been in this court, the first appeal presenting the question alone as to the sufficiency of the petition, to which a demurrer had been sustained and the judgment reversed.

John Fennessey married his first wife, Angeline Demaris, in the year 1855. She was then the owner of a millinery establishment, and her husband owned a small stock of dry goods, their joint fortune not exceeding fifteen hundred dollars. After the marriage her business was transferred to the store of her husband, in which she took an active part, and sometimes the absolute control, and in nine or ten years they accumulated an estate worth $100,000, and we might add that much of their success in business is to be attributed to the skill and industry of the wife. When her health began to fail she often insisted upon her right to have her husband secure to her children some part of the estate, and his promises to do so were as frequent as her demands. They had four children, and, prior to his wife's death, he conveyed to his youngest child, Angeline, a house and lot; this was in 1864. After his wife's death he often spoke of his purpose to comply with his wife's wishes, and, even before her death, had designated the particular houses, except the one for his son William. The intention of the father to convey these lots seems never to have been abandoned, but the deeds were not in fact executed until a few days prior to his last marriage.

It is insisted by counsel for the appellants that any conveyance, without consideration, to children or others by one party pending a marriage treaty, on the eve of its solemnization, without the knowledge or concurrence of the other party, is actual and positive fraud that admits of no explanation or exception, and, therefore, all the proof as to the claims of the first wife and her children upon the husband's bounty, connected

with the proof as to the value of his estate, can in no manner affect the decision of this case. In this view of the question presented we can not concur. The general doctrine laid down by counsel is often found in the text-books as well as the reported cases, but upon an examination of the elementary rules on the subject it will be found that such transactions are only *prima facie* fraudulent and void, and the reported cases cancelling such conveyances make the fraudulent *intent* with which they are made the question to be determined by the jury or the court, and the parties holding under the deed may show that no fraud was intended or practiced on the party complaining.

If one, when about to consummate a marriage contract, should make a voluntary conveyance of his estate or the greater portion of it to his children, without the knowledge or consent of the wife, the conveyance would doubtless be of such a character as to make the charge of fraud conclusive to the mind of the chancellor, but to hold that from every conveyance voluntarily made by the intended husband or wife, lessening the value of the interest that the one might have in the estate of the other by reason of the marital relation, arises a conclusive presumption of fraud, would often work great injustice and defeat bona fide conveyances made by those whose legal and natural duty requires them to provide for the maintenance and education of their children.

A distinction is attempted to be drawn by some of the authorities between conveyances made by the husband on the eve of marriage and those made by the wife, the authorities holding that while a conveyance

secretly made by the wife on the treaty of marriage is, *prima facie* fraudulent, it might not, under similar circumstances, be held fraudulent if made by the husband. This doctrine is based on the ground that the consummation of the marriage burdens the husband with the wife's support, and makes him liable for her deeds. (Bright's Husband and Wife, vol. 1, p. 357; Countess of Strathmore v. Bowes, 1 Vesey, Jr., 22.)

It is not necessary that we should follow or adopt such a doctrine, and, in the consideration of this case, will regard the marital rights of the one as sacred as those of the other.

This court said, when the case was here, that the facts alleged made out a *prima facie* case, and if facts existed rendering the conveyances valid, those facts must be pleaded.

The promises made by the husband to his first wife to execute these several conveyances, and his continued purpose to do so, can not defeat the claim to dower of the present appellant, if the deeds were made with the fraudulent purpose of depriving the appellant of dower in this realty, and such testimony is admissible for the purpose only of showing that the conveyances were made in good faith, and, if so made, must be held valid, although their legal effect is to bar the appellant's right of dower.

If the property conveyed constituted the bulk of the husband's estate, or was such an advancement to his children as was unreasonable when compared with the value of his entire property, we should have no hesitation in adjudging the conveyances fraudulent as to the wife. The testimony on the part of the appellees con-

duces to establish that, in 1867, when this second marriage took place, the husband's estate was of the value of seventy or eighty thousand dollars, and on the part of the appellants, that it was of the value of forty or fifty thousand dollars, and by the commissioner, that he sold the realty in the settlement of the estate to pay debts for thirty-nine thousand dollars.

After the second marriage the husband and father was unfortunate in business, unhappy in his marriage relation, became reckless and dissipated, and wasted nearly the whole of his estate.

The second wife, appellant, brought nothing to the common fund, and we see no reason why the father, worth not less than fifty thousand dollars, could not make advancements to his children by his first wife amounting to nine thousand dollars.  He doubtless thought it best to execute the deeds before the existence of the potential right of dower by his second wife ; but this act was not fraudulent, although made in contemplation of his second marriage.  It was not done to prevent the wife from the enjoyment of his estate, or to deprive her of such an interest in it as she might reasonably have expected when becoming his wife. That the appellant regarded the realty as belonging to the husband may be conceded, but it can be scarcely argued that, if informed of the conveyances, she would have declined to enter into the marital relation.

Adams on Equity, in treating of the right of a woman to convey away her property after the contract of marriage has been entered into, says " that it is for the court to determine in each case whether, having regard to the condition of the parties and other attendant

circumstances, a transaction complained of by the husband should be held as fraudulent." (Adams on Equity, page 406.)

Bigelow on Fraud, in discussing the same principle, says that the burden of impeaching the validity of the conveyance rests on the husband if he objects to it. "The mere non-disclosure of an antenuptial convey-ance would not of itself render the transaction im-peachable by the husband, nor where provision was made by a widow for the children of a former marriage could the deed be invalid. The equity which arises in cases of this nature depends upon the peculiar circum-stances of each case as bearing on the question whether the facts do or do not amount to fraud upon the in-tended husband." (Bigelow on Fraud, page 51.)

In this State the substance of the decisions are that, for the husband, before marriage, to convey the whole or the greater portion of his estate away, without the knowledge of the wife, is a fraud on her rights, and this view is sustained by the weight of authority; and it may also be regarded as settled, that where any such voluntary conveyances are made, without the knowl-edge of one of the contracting parties, it presents a prima facie case of fraud, subject to be explained by the parties interested, and the burden is on the grantees to establish the validity of the deed. We find no case establishing the proposition that a deed of conveyance made by the husband or wife, at the time possessed of an ample fortune, by which their children by a former marriage have been vested with the title to a reasonable portion of the estate, and such as a father or mother in his or her pecuniary condition might reasonably ad-

vance to their children, is fraudulent as to the contracting party not informed of the conveyance prior to the consummation of the marriage contract.

To hold that such advancements can not be made that are reasonable, looking to the condition of the father's estate, would prevent any bona fide alienation or advancement by him to his children by a former wife, and require that he should hold his entire estate, except from purchasers for value, that his intended wife may assert her inchoate right of dower. The actual purpose or intent to defraud must appear, and, when made in good faith, such a settlement upon the children as was made in this case by the father will be sustained by a court of equity.

All the cases cited by counsel, from Thayer v. Thayer, 14 Vermont, 107, to Reynolds v. Vance, 1 Heiskell, 344, show a disposition by the husband of all or nearly the whole of his estate, with circumstances attending the transaction that show a plain case of fraud.

Mr. Story, in his work on Equity Jurisprudence, 1st vol., sec. 273, says that a secret conveyance made by a woman in contemplation of marriage, to her separate use, will be held void and in derogation of the marital rights of her husband, or a conveyance in favor of a person for whom she is under no moral obligation to provide. "But," says the same author, "if she only reasonably provides for her children by a former marriage under circumstances of good faith, it would be otherwise."

Where the intention is to provide for the children, and not to defraud the wife, and the advancement or

gift is reasonable, when considered with reference to the property owned by the donor or grantor, the chancellor will uphold the transaction; and, after a careful review of the facts in this record, we are satisfied that no such facts are presented as will authorize the chancellor to disturb the conveyances made that the wife may obtain dower.

Judgment affirmed.